UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

No. 6:21-cv-00226

**Equal Employment Opportunity Commission,**
*Plaintiff*,

v.

**SDI of Mineola, Texas, LLC d/b/a/ Sonic Drive-In et al.,**
*Defendants.*

## OPINION AND ORDER

On September 21, 2022, after the parties received the court's proposed jury instructions and announced ready, the court held the charge conference pursuant to Federal Rule of Civil Procedure 51(b)(2). During the conference, plaintiff EEOC objected to an aspect of the court's proposed instruction on compensatory damages for nonpecuniary harm. Specifically, EEOC objected to the inclusion of an instruction on the reduction of damages to the extent that a claimant unreasonably failed to mitigate them. EEOC argued that, in a Title VII employment-discrimination case, the duty to mitigate damages does not apply to nonpecuniary harm.

Federal law allows an aggrieved person to recover compensatory damages for his or her nonpecuniary loss from employment discrimination. Specifically, the law allows compensatory damages for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses."[1]

That law has no express requirement that a claimant mitigate damages. But, as the Supreme Court has held, "Congress is understood to legislate against a background of common-law adjudicatory principles."[2] So "where a common-law principle is well established,

---

[1] 42 U.S.C. § 1981a(b)(3). *See also id.* § 1981a(a)(1) (allowing a "complaining party" to recover compensatory damages); *id.* § 1981a(d)(1) (defining "complaining party" to include EEOC or a person who may sue under Title VII).

[2] *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991).

. . . the courts may take it as given that Congress has legislated with an expectation that the principle will apply except 'when a statutory purpose to the contrary is evident.'"[3] That is not a strict "clear statement" rule but rather an "interpretive presumption."[4] The presumption is rebutted if Congress has "expressly or impliedly" evinced a contrary direction.[5]

That interpretative presumption applies here. First, the duty for a person to mitigate his or her harm from wrongful conduct is an established duty of common law.[6] McCormick's treatise *Law of Damages* explains the doctrine: "Where one person has committed a tort, breach of contract, or other legal wrong against another, it is incumbent upon the latter to use such means as are reasonable under the circumstances to avoid or minimize the damages. The person wronged cannot recover for any item of damage which could thus have been avoided." Congress is thus presumed to have legislated against that background principle.

Second, Congress has not expressly or impliedly evinced a contrary expectation on this issue. This is not a case like *Astoria Federal Savings & Loan*,[7] where some procedure in Title VII is inherently inconsistent with a common-law doctrine. Nothing about the nature of nonpecuniary harm renders it inherently incompatible with mitigation by a claimant. For instance, a person might reduce the extent of emotional distress by following a doctor's advice to engage in counseling.[8] Or, in the case of a person claiming damages for

---

[3] *Id.* (quoting *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783 (1952)).

[4] *Id.*

[5] *Id.* (finding the presumption rebutted where Title VII's requirements "plainly assume" a different procedure).

[6] Charles T. McCormick, Law of Damages 127 (1935); *accord Gallup v. Omaha Prop. & Cas. Ins. Co.*, 282 F. App'x 317, 321 (5th Cir. 2008) (unpublished) ("Because the duty to mitigate is a common law duty, it exists 'in the absence of an explicit policy provision or statutory provision imposing such a duty.'"); James O. Castagnera, Patrick J. Cihon & Andrew M. Morriss, 26 No. 12 Term. of Emp't Bulletin 1 (Dec. 2010) ("There is a general obligation to mitigate damages in employment law cases, an application of well-established contract and tort law principles.").

[7] 501 U.S. at 108.

[8] *Cf. Skaria v. New York*, 442 N.Y.S.2d 838, 842 n.1 (N.Y. Ct. Cl. 1981) (noting that a victim failed to mitigate emotional distress by not seeking treatment).

inconvenience and mental anguish arising from not having a job, the person might mitigate that nonpecuniary harm by seeking other jobs. The statute's allowance of compensatory damages for nonpecuniary loss is not inconsistent with the common-law duty to mitigate damages.

Neither is any other provision of the statute inconsistent with the duty to mitigate nonpecuniary harm. EEOC relies on the separate Title VII provision allowing courts to order "reinstatement or hiring of employees, with or without back pay . . . , or any other equitable relief as the court deems appropriate."[9] That provision includes the following limit: "Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable."[10]

That language traces back to § 706(g) of the Civil Rights Act of 1964, in which only that relief and injunctive relief were mentioned.[11] It was only in 1991 that Congress allowed the complaining party in a § 706 lawsuit to "recover compensatory and punitive damages" in addition to the relief authorized by § 706(g).[12]

EEOC suggests that Congress's inclusion, in 1964, of a mitigation-of-loss limit on the equitable relief of back pay implicitly negates the availability of the common-law mitigation defense to the remedy of compensatory damages that Congress authorized in 1991. That suggestion is unpersuasive.

Its logic invokes the canon of statutory construction *expressio unius est exclusio alterius*, also known as the negative-implication canon. But that canon requires a specific enumeration of particulars that can reasonably be thought to express all members to which a

---

[9] 42 U.S.C. § 2000e-5(g)(1).
[10] *Id*.
[11] Civil Rights Act of 1964, Pub. L. No. 88-352, tit. VII, § 706(g), 78 Stat. 241, 261, provided that, if a court finds intentional discrimination, "the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include reinstatement or hiring of employees, with or without back pay . . . ."
[12] Civil Rights Act of 1991, Pub. L. No. 102-166, § 102, 105 Stat. 1071, 1072–74, created the new section codified at 42 U.S.C. § 1981a.

grant or prohibition applies.[13] For instance, if § 1981a had set out a list of the available affirmative defenses to compensatory damages, and if that hypothetical list excluded mitigation, then the canon might apply. But § 1981a has no such list.

Neither is EEOC's position supported by § 706(g) of the Civil Rights Act of 1964, which is codified at 42 U.S.C. § 2000e-5(g). That provision does not address any remedies other than injunctive relief and reinstatement with or without back pay. Section 706(g) simply does not authorize compensatory damages for nonpecuniary loss. Congress's inclusion of the mitigation defense to an award of back pay authorized in the 1964 law could not implicitly preclude that defense to a different remedy that did not exist at the time.

In contrast, Congress's 1991 law authorized "compensatory and punitive damages" broadly.[14] And that difference in scope easily explains the stylistic difference when it comes to defense. The 1964 law may well have needed to mention the mitigation defense to avoid implying its exclusion, as § 706(g)'s definition of back-pay relief excludes two things.[15] It excludes what a person could have earned in the interim period between the wrong and the remedy (the mitigation concept from common law). And it excludes what a person did in fact earn in that interim period (a causation-of-loss concept from common law). Had the law mentioned only the second concept in listing the exclusions, the *expressio unius* canon might have supported the inference that the mitigation limit did not apply.

In contrast, the 1991 legislation took a different approach and simply mentioned "compensatory and punitive damages"[16] without listing the defenses to such damages. There is no fair implication that Congress was somehow, silently precluding common-law defenses when enacting this law of different scope, decades later, codified in a different section of the U.S. Code.

---

[13] Antonin Scalia & Brian A. Garner, Reading Law: The Interpretation of Legal Texts 107–108 (2012).
[14] 42 U.S.C. § 1981a(a)(1)–(3).
[15] *Id.* § 2000e-5(g).
[16] *Id.* § 1981a(a)(1).

Nor is such an implication hinted at from statutory goals. To be sure, "one of the central purposes of Title VII is 'to make persons whole for injuries suffered on account of unlawful employment discrimination.'"[17] But common-law defenses are consistent with that goal. We know that because the Civil Rights Act of 1964 itself allowed a mitigation defense to the monetary relief that it provided for employment discrimination. So the statutory "make whole" objective is consistent with recognizing common-law defenses.

The court's attention has been called to only one decision with reasoning of any appreciable extent on this issue. It reached a contrary conclusion. But the court disagrees with it because it gets two things wrong.[18]

First, that decision gets the legislative context wrong. The decision assumes that the relevant legal enactment is "Congress's 1972 Amendments to Title VII," which that court treated as adding an authorization of back pay to the law's existing authorization of compensatory damages. Hence, that decision refers to the 1972 amendments as having "single[d] out" back pay "alone" in enacting a duty to mitigate loss.[19]

But that is wrong. The 1972 amendments made no change relevant to this issue. An award of back pay, with its mitigation limit, was allowed since the Civil Rights Act of 1964.[20] And, critically, neither the 1964 act nor the 1972 amendments authorized compensatory damages for nonpecuniary loss in a § 706(g) action. So there is nothing "illogical" about the 1964 act (or the 1972 amendments) having

---

[17] *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 763 (1976).

[18] *EEOC v. Fred Meyer Stores, Inc.*, 954 F. Supp. 2d 1104, 1128 (D. Or. 2013), *on reconsideration in part* (Sept. 19, 2013). That opinion has been cited on this point in three other decisions, but none added any reasoning. *See EEOC v. Global Horizons, Inc.*, No. 1:11-cv-00257, 2014 WL 819129 (D. Haw. Feb. 28, 2014); *Johnson v. City of San Diego*, No. 3:17-cv-00410, 2019 WL 1538410, at *4 (S.D. Cal. Apr. 9, 2019); *United States v. Regents of N.M. State Univ.*, No. 1:16-cv-911, 2018 WL 4760664, at *3 (D.N.M. Oct. 1, 2018). The court disagrees with their adoption by citation for the same reason as the court disagrees with the cited decision.

[19] *Fred Meyer Stores*, 954 F. Supp. 2d at 1128.

[20] *See supra* n.11.

addressed mitigation as to back pay only.[21] That was simply the only monetary relief specified in § 706(g).

Second, the cited decision gets the legal presumption wrong. From Congress's silence as to mitigation when allowing compensatory damages for nonpecuniary loss (in the 1991 law), the decision reasons that Congress "did not intend to create a duty to mitigate all compensatory damages."[22] But that is not the question. Congress did not need to "create" a duty to mitigate compensatory damages. That duty is an established part of the common law, against which Congress is presumed to legislate.[23] The question is simply whether the civil-rights law is inconsistent, expressly or implicitly, with application of the mitigation doctrine.[24] As explained above, it is not.

EEOC also directed the court's attention to an unpublished opinion that is even further afield.[25] In that Title VII case, the district court entered summary-judgment for an employer, and the court of appeals reversed.[26] As an "alternate argument[] for affirmance," the employer argued on appeal that an employee failed to mitigate her emotional distress.[27] But to affirm *summary judgment for the employer* on that basis, a failure to mitigate would have had to (1) be beyond genuine factual dispute and (2) completely bar the employee's recovery. The court of appeals confronted only that argument, holding that not every possible failure to mitigate damages will "*by itself bar*" a recovery of compensatory damages for emotional distress.[28] The court had no occasion to address the extent to which

---

[21] *Fred Meyer Stores*, 954 F. Supp. 2d at 1128.

[22] *Id.*

[23] *Astoria Fed. Sav. & Loan Ass'n*, 501 U.S. at 108. Indeed, for those who consider it, the legislative history of the Civil Rights Act amendments supports this interpretive presumption. *See* Section-by-Section Analysis of H.R.1746, *accompanying* The Equal Employment Opportunity Act of 1972 Conference Report, 118 Cong. Rec. 7166 (1972) ("In any area where the new law does not address itself, or in any areas where a specific contrary intention is not indicated, it was assumed [t]hat the present case law as developed by the courts would continue to govern the applicability and construction of Title VII.").

[24] *Astoria Fed. Sav. & Loan Ass'n*, 501 U.S. at 108.

[25] *Castagna v. Luceno*, 558 F. App'x 20, 22 (2d Cir. 2014) (unpublished).

[26] *Id.*

[27] *Id.*

[28] *Id.* (emphasis added).

a failure to mitigate may *reduce* compensatory damages for nonpecuniary loss. And the court's unpublished decision did not further engage the issue or address governing legal presumptions. It is thus unpersuasive on the point at hand.

For those reasons, EEOC's objection to the mitigation component of the jury instruction on compensatory damages for nonpecuniary harm is overruled.

*So ordered by the court on September 27, 2022.*

J. CAMPBELL BARKER
United States District Judge